Michael Chen Esq. (SBN 218863)
Michael Chen Law Offices
7330 Edna Ave.
Las Vegas NV 89117
michael@michaelchenlaw.com
Tel: (626) 249-2002
Attorneys for Plaintiffs Yong Yang, Yun Gao

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| YONG YANG, an individual; YUN GAO, an individual;<br>Petitioners,<br><br>v.<br><br>THOMAS P. GILES, Field Office Director, Los Angeles Field Office, U.S. Immigration and Customs Enforcement; DAVID J. VENTURELLA, Acting Director, U.S. Immigration and Customs Enforcement; and MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security,<br><br>Respondents. | Case No.<br><br>JOINT PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241<br><br>**IMMIGRATION HABEAS**<br><br>[REQUEST FOR PROMPT ORDER TO SHOW CAUSE UNDER 28 U.S.C. § 2243] |

**INTRODUCTION**

1. Petitioners Yong Yang ("Mr. Yang") and Yun Gao ("Ms. Gao") are husband and wife, longtime residents of Orange County, and respondents in consolidated removal proceedings before the Santa Ana Immigration Court. They are currently subject to significant restraints on their liberty imposed by the Department of Homeland Security ("DHS") and U.S. Immigration and Customs Enforcement ("ICE"), including body-worn GPS ankle monitors,

home visits, and in-person reporting requirements. Those restraints constitute custody for purposes of 28 U.S.C. § 2241.

2. Petitioners were lawfully admitted to the United States as conditional lawful permanent residents on December 6, 2014. Ms. Gao was the principal EB-5 investor and Mr. Yang obtained status as her derivative spouse. They have lived in the United States for more than eleven years, are raising four children in Orange County, and have appeared for every immigration court hearing and every ICE or ISAP appointment required of them. Neither has ever been arrested by a police department, charged with a criminal offense, or convicted of a crime. Their removal proceedings concern the denial of a Form I-829 petition, not any allegation of criminal conduct.

3. Despite that record, ICE issued Mr. Yang an Order of Release on Recognizance ("OREC") on July 29, 2026 and caused a GPS device to be attached to his ankle on July 30, 2026. ICE issued Ms. Gao an OREC on July 30, 2026 and caused a GPS device to be attached to her ankle on July 31, 2026. The conditions were imposed without a neutral hearing and without any meaningful individualized explanation why continuous body-worn location monitoring was necessary for either spouse. (Exs. A-B.)

4. The monitors are not minor administrative inconveniences. Mr. Yang experiences continuous itching and discomfort that worsens with walking and driving, cannot swim or exercise as before, must remain seated for approximately forty minutes to one hour each day to charge the device, and stopped working as an Uber delivery driver because of the stigma and practical effects of the monitor. Ms. Gao has experienced progressive swelling, chafing, and pain around her ankle, at times severe enough to prevent sleep and require elevation and ice. She likewise must remain seated to charge the device daily and has curtailed ordinary activities with

her children. Both have experienced signal failures that prompted supervision calls even while they were at home. (Exs. H-I.)

5. Petitioners do not seek to avoid reasonable supervision. They are willing to use SmartLINK, telephone reporting, periodic in-person reporting, maintain current contact information, and comply with every lawful condition reasonably necessary to assure appearance. They challenge only the government's decision to subject them to continuous body-worn GPS monitoring and related intensive restrictions without a constitutionally adequate process or an individualized determination that such restrictions are necessary.

6. Federal courts have recognized that a GPS ankle monitor and intensive ATD conditions may constitute custody under 28 U.S.C. § 2241; that severe custodial restraints implicate procedural and substantive due process; and that agency action may be unlawful under the Administrative Procedure Act ("APA") when ICE substitutes blanket escalation for individualized decisionmaking required by governing procedures.

7. Petitioners therefore seek a writ requiring Respondents to remove the GPS ankle monitors and discontinue body-worn GPS monitoring, while permitting reasonable non-body-worn supervision. In the alternative, Petitioners seek a prompt hearing before a neutral decisionmaker at which the government must justify continued body-worn GPS monitoring based on individualized evidence of flight risk or danger.

## JURISDICTION AND VENUE

8. This Court has habeas jurisdiction under 28 U.S.C. § 2241 because Petitioners are in custody under color of federal authority and allege that the custody violates the Constitution

and laws of the United States. See *Jones v. Cunningham*, 371 U.S. 236, 239-43 (1963); *Sun v. Santacruz*, No. CV 25-02198-JLS (JCx), 2025 WL 2730235, at *3 (C.D. Cal. Aug. 26, 2025).

9. This Court also has federal-question jurisdiction under 28 U.S.C. § 1331, authority under 5 U.S.C. §§ 702 and 706, 28 U.S.C. § 1651, and 28 U.S.C. §§ 2201-2202, and constitutional authority under the Due Process Clause of the Fifth Amendment.

10. Venue is proper in the Central District of California because Petitioners reside in Tustin, California, within Orange County; the challenged supervision is administered through ICE/ERO and ISAP operations in this District; and a substantial part of the events giving rise to this Petition occurred in this District. See 28 U.S.C. § 1391(e).

11. For *habeas* purposes, Petitioners are supervised by the Los Angeles ICE Field Office and its subordinate operations serving Orange County. The Los Angeles Field Office Director is therefore an appropriate immediate custodian. See *Doe v. Garland*, 109 F.4th 1188, 1197-99 (9th Cir. 2024). The remaining Respondents are named in their official capacities because they exercise authority over the challenged ICE custody and ATD policies.

12. Petitioners' claims arise from the same series of events, involve the same household, the same consolidated removal proceedings, materially identical GPS conditions, and common legal questions. Joint adjudication will promote efficiency and avoid inconsistent rulings. If the Court concludes separate habeas actions are procedurally required, Petitioners respectfully request severance rather than dismissal.

## REQUIREMENTS OF 28 U.S.C. § 2243

13. Section 2243 directs the Court to grant the writ or issue an order to show cause "forthwith" unless it appears from the application that the applicant is not entitled to relief. If an

order to show cause issues, the return is due within three days unless additional time, not exceeding twenty days, is allowed for good cause.

14. *Habeas corpus* is intended to provide a swift remedy for unlawful restraints on liberty. See *Yong v. I.N.S.,* 208 F.3d 1116, 1120 (9th Cir. 2000). Petitioners therefore request prompt consideration because the challenged restraints operate continuously, twenty-four hours a day.

**PARTIES**

15. Petitioner Yong Yang, also known as Leo Yang, is a citizen of China who was admitted to the United States on December 6, 2014 as a conditional lawful permanent resident. He lives in Tustin, California with his wife and children and is a respondent in removal proceedings before the Santa Ana Immigration Court.

16. Petitioner Yun Gao, also known as Grace Gao, is a citizen of China who was admitted to the United States on December 6, 2014 as a conditional lawful permanent resident based on her EB-5 investment. She lives in Tustin, California with her husband and children and is a respondent in the same consolidated removal proceedings.

17. Respondent Thomas P. Giles is the Field Office Director of ICE's Los Angeles Field Office and is sued in his official capacity. He is responsible for ICE enforcement and supervision operations in the relevant area and is an appropriate custodian of Petitioners for purposes of this Petition.

18. Respondent David J. Venturella is the Acting Director of ICE and is sued in his official capacity. He is responsible for ICE policies, practices, and procedures, including those governing Alternatives to Detention and electronic monitoring.

19. Respondent Markwayne Mullin is the Secretary of the U.S. Department of Homeland Security and is sued in his official capacity. He has ultimate supervisory authority over DHS and ICE. Any successor to a named official is automatically substituted under Federal Rule of Civil Procedure 25(d).

**EXHAUSTION**

20. Exhaustion in a § 2241 immigration habeas case is prudential, not jurisdictional. *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). A court may excuse exhaustion when administrative remedies are inadequate or inefficacious, pursuit would be futile, irreparable injury would result, or the administrative proceedings would be void. Id.; *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004).

21. Petitioners sought relief directly from ICE through counsel. On July 31, 2026, counsel submitted written requests asking ICE to remove the ankle monitors and substitute SmartLINK or another less restrictive method. ICE and ISAP did not respond to those requests before Petitioners prepared their motions to the Immigration Court. (Ex. C.)

22. Petitioners also timely filed motions under 8 C.F.R. § 1236.1(d)(1) asking the Immigration Judge to ameliorate the terms of release and remove the body-worn GPS monitors. On August 6, 2026, the Immigration Judge denied the motion, stating that "[t]he Court lacks the authority to order the removal of the GPS ankle monitor, which is administered and monitored by ICE." The order further stated that the Court had no hearing date available before Petitioners' September 16, 2026 individual hearing. (Ex. D.)

23. That ruling left Petitioners without a meaningful, prompt administrative forum to obtain review of the ongoing bodily restraint. The stated jurisdictional rationale is contrary to

*Matter of Garcia-Garcia*, 25 I&N Dec. 93, 95-97 (BIA 2009), which holds that an Immigration Judge may review and ameliorate DHS-imposed terms of release under 8 C.F.R. § 1236.1(d)(1), including conditions imposed through an alternatives-to-detention program. Petitioners therefore invoked the precise administrative remedy provided by regulation, but the tribunal charged with hearing that request declined to exercise the authority recognized by controlling BIA precedent.

24. To the extent Respondents contend that an appeal to the Board of Immigration Appeals or any additional administrative step is required, exhaustion should be excused. Habeas exhaustion is prudential, not jurisdictional; Petitioners challenge restraints that operate continuously and cause injury every day; the Immigration Judge has already declined to exercise the regulatory authority that could have provided immediate relief; and further delay would prolong the very custody challenged in this Petition. See *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017); *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004).

## STATEMENT OF FACTS

### A. Petitioners' Family, Residence, and Immigration Proceedings

25. Mr. Yang was born on August 14, 1977 in Daqing, Heilongjiang Province, China. Ms. Gao was born on April 15, 1978 in Lanzhou, Gansu Province, China. They have been married since May 17, 2012.

26. Both Petitioners entered the United States on December 6, 2014 as conditional lawful permanent residents admitted on immigrant visas. Ms. Gao was the principal investor on a Form I-526 immigrant investor petition; Mr. Yang obtained status as her derivative spouse.

27. Petitioners currently live at a leased residence in Tustin, California, where they have lived since approximately July 21, 2025. Their residence, family responsibilities, property, and economic interests are centered in the United States. (Ex. I.)

28. Petitioners have four children. Their eldest son, born in 2007, serves in the United States Army Reserve. Their elder daughter, born in 2012, lives with them and attends school in Orange County. Their two younger daughters, born in 2017 and 2019, are United States citizens by birth and also live with Petitioners and attend school in Orange County.

29. Petitioners jointly provide financial support, transportation, household management, and daily care for their children. These responsibilities give both Petitioners substantial and concrete reasons to remain at their residence, maintain contact with the government, and attend all proceedings.

30. The removal proceedings concern USCIS's denial of Ms. Gao's Form I-829 petition to remove conditions on residence. The same determination affects Mr. Yang as her derivative spouse. Petitioners dispute the denial and intend to litigate the merits fully. Their next individual hearing is scheduled for September 16, 2026 at 10:00 a.m. before the Santa Ana Immigration Court.

31. Petitioners have strong incentives to appear. They have invested years of effort and substantial resources in their immigration matters, and their ability to remain together with their family in the United States depends on their continued participation in the proceedings.

**B. Petitioners' Employment and Community Ties**

32. Before the ankle monitor was attached, Mr. Yang worked part-time as a self-employed Uber delivery driver, ordinarily twenty to thirty hours per week. His work requires driving, walking, entering and exiting his vehicle, carrying orders, and meeting customers.

33. Since the monitor was attached, Mr. Yang has stopped making deliveries because he is concerned that customers may see the monitor, infer criminal conduct, complain to the delivery platform, or otherwise react in a way that disrupts his work and family finances.

34. Ms. Gao has worked part-time since January 1, 2026 as a business development consultant for Whimsy Land US, a California indoor children's playground company operating under Super Wyld Inc. Her duties involve business development, project management, and client outreach.

35. Petitioners have filed joint federal income tax returns for multiple consecutive years. Their household, financial obligations, and children's schooling are longstanding ties to this District.

**C. ICE Imposed Body-Worn GPS Monitoring in July 2026**

36. On July 29, 2026, ICE issued Mr. Yang an OREC. On July 30, 2026, ICE or the contractor administering ISAP attached a GPS monitoring device to his left ankle. The device has remained attached since then. (Ex. A.)

37. When Mr. Yang appeared at ICE, he asked to speak with his attorney because he did not understand the legal implications of the papers presented to him. ICE personnel did not permit him to consult counsel. He was told that he would be taken into custody if he did not agree to GPS ankle monitoring.

38. On July 30, 2026, ICE issued Ms. Gao an OREC. On July 31, 2026, ICE or the contractor administering ISAP attached a GPS monitoring device to her left ankle. The device has remained attached since then. (Ex. B.)

39. Ms. Gao brought documents concerning her immigration status and pending proceedings to her ICE appointment and attempted to explain her circumstances. She was not given a meaningful opportunity to present those materials or explain why body-worn GPS monitoring was unnecessary. She was told that she was under arrest.

40. The OREC and ATD documents require Petitioners to comply with electronic monitoring and other supervision conditions. Petitioners' current requirements include body-worn GPS monitoring, home visits, and in-person reporting. (Exs. A-B.)

41. Nothing in the individualized records identified by Petitioners explains why continuous body-worn GPS location tracking—as opposed to SmartLINK, telephone reporting, or periodic in-person reporting—is necessary to address a specific risk presented by either Petitioner.

**D. Petitioners Have Perfect Compliance Records and Present No Danger**

42. Mr. Yang appeared at the ERO office on July 29, 2026, reported for GPS enrollment on July 30, completed every required check-in, and has attended all Immigration Court hearings, including the February 17 and March 6, 2026 settings. He has never missed an ICE, ISAP, or court appointment.

43. Ms. Gao appeared at the ERO office on July 30, 2026, reported for GPS enrollment on July 31, completed every required check-in, and likewise attended the February 17 and March 6, 2026 Immigration Court settings. She has never missed an ICE, ISAP, or court appointment.

44. Neither Petitioner has ever been accused of tampering with a monitor, violating a geographic restriction or curfew, failing to report, hiding from ICE, or attempting to avoid the Immigration Court.

45. Neither Petitioner has ever been arrested by a police department, charged with a criminal offense, or convicted of a crime. Nevertheless, as a result of ICE's July 2026 civil immigration processing, both Petitioners now have entries in the FBI's Identity History Summary database reflecting prior arrest data. Mr. Yang's FBI record identifies him as "ARRESTED OR

RECEIVED" on July 29, 2026 by U.S. DHS ERO Santa Ana and lists a charge concerning termination of conditional permanent residence. Ms. Gao's FBI record similarly identifies her as "ARRESTED OR RECEIVED" on July 30, 2026 by U.S. DHS ERO Santa Ana and lists an immigration-related charge concerning termination of conditional permanent residence. These entries arise from the civil immigration proceedings at issue here, not from any criminal prosecution or conviction. (Exs. E-F.)

46. The FBI arrest entries create an additional and continuing collateral consequence of ICE's actions. Because the entries appear in federal identity-history records as arrest data, Petitioners reasonably fear that government agencies or other authorized recipients of criminal-history information may misunderstand the civil immigration processing as evidence of criminal conduct, causing reputational, employment, and other practical harm. The records themselves identify U.S. DHS ERO Santa Ana as the agency that furnished the arrest data. (Exs. E-F.)

47. Neither Petitioner has threatened or injured another person, uses illegal drugs, or has a history of alcohol abuse or other conduct suggesting danger to the community. The removal proceedings arise from an immigration-petition determination, not criminal allegations.

**E. The GPS Monitors Cause Significant Physical and Practical Harm**

48. Mr. Yang’s monitor is bulky and rigid. It moves and presses against his ankle when he walks, drives, climbs stairs, exercises, or changes position. He has experienced ongoing itching and discomfort since the device was attached, with symptoms worsening after walking and driving. (Ex. G.)

49. Mr. Yang rates his ordinary discomfort at approximately six out of ten and approximately eight out of ten after substantial walking, driving, work, or exercise. He cannot

swim and can no longer exercise as he did before. Before the monitor was attached, he gave his children swimming lessons each week. (Ex. G.)

50. The device also disrupts Mr. Yang's sleep because he must position his leg around the rigid monitor. The visibility of the device creates stigma in front of customers, parents, and members of the public, contributing to his decision to stop working as a delivery driver.

51. Ms. Gao has experienced swelling around her ankle, constant chafing where the strap rests against her skin, and pain from the swelling. Her discomfort is ordinarily approximately six or seven out of ten and, when swelling becomes severe, can reach ten out of ten. At those times she cannot sleep and must elevate her leg and apply ice. (Ex. H.)

52. Ms. Gao has curtailed walking, park outings, and ordinary activities with her children. She fears that the device will become visible at school events and that parents or students will wrongly assume criminal conduct, creating stigma for her children.

53. Each Petitioner must charge the monitor approximately once per day for about forty minutes to one hour. While charging, each must remain seated and near the charging equipment and cannot drive, work, or leave the house.

54. The devices have also experienced signal or battery issues. On August 3, 2026, the supervision program contacted the household because the devices could not be tracked even though Petitioners were at home. Petitioners reasonably fear that equipment failure outside their control could be mistaken for noncompliance.

**F. Less Restrictive Supervision Is Readily Available**

55. Both Petitioners own compatible smartphones, maintain reliable cellular and internet service, and are willing and able to use SmartLINK for facial-verification or other electronic check-ins.

56. Both are willing to answer scheduled telephone calls, report in person at reasonable intervals, maintain their current residence and contact information, appear at every Immigration Court hearing, attend every ICE or ISAP appointment, and remain in regular communication with counsel.

57. Mr. Yang has also stated that, if additional financial assurance is considered necessary, he is willing to post a reasonable bond in lieu of body-worn GPS monitoring. Petitioners are not asking to terminate all supervision; they seek a reasonable method that does not require an electronic tracking device to remain continuously attached to their bodies.

**G. ICE's ATD Policies Require Individualized Supervision Decisions**

58. ICE's publicly described Alternatives to Detention program uses multiple technologies, including smartphone-based reporting and GPS devices. ICE has represented that the level of supervision and technology assigned to a participant is based on individualized factors including immigration status, criminal history, compliance history, community or family ties, caregiver or provider status, and humanitarian or medical conditions.

59. The 2017 ATD Handbook likewise states that ICE evaluates a participant's unique situation and assigns the appropriate level of monitoring on a case-by-case basis using multiple factors. The Handbook has been described by the Government Accountability Office as the ATD

program's standard operating procedure. A blanket escalation policy requiring GPS monitors whenever possible is inconsistent with that individualized framework.

60. A June 9, 2025 memorandum from Acting ICE Assistant Director Dawnisha M. Helland instructed ERO personnel, when a noncitizen is not arrested at reporting, to escalate supervision to GPS ankle monitors whenever possible and increase reporting requirements regardless of case type. On information and belief, Petitioners' near-identical treatment in July 2026 - despite materially favorable individualized factors - is consistent with implementation of that blanket approach rather than a reasoned case-by-case determination.

**H. H. Petitioners Timely Sought Administrative Review, but the Immigration Judge Declined to Exercise Authority**

61. Mr. Yang and Ms. Gao filed their motions to ameliorate within seven days of release, expressly invoking 8 C.F.R. § 1236.1(d)(1) and Matter of Garcia-Garcia, 25 I&N Dec. 93 (BIA 2009). They asked the Immigration Court to remove the GPS ankle monitors and substitute SmartLINK, telephone reporting, periodic in-person reporting, or other reasonable non-body-worn supervision. (Ex. D.)

62. On August 6, 2026, the Immigration Judge denied the request on the ground that the Court "lacks the authority to order the removal of the GPS ankle monitor, which is administered and monitored by ICE." The Immigration Judge did not make an individualized finding that either Petitioner presents a danger or flight risk and did not determine that body-worn GPS monitoring is necessary. (Ex. D.)

63. *Matter of Garcia-Garcia* holds that 8 C.F.R. § 1236.1(d)(1) authorizes an Immigration Judge to review and ameliorate DHS-imposed conditions of release, including participation in an alternatives-to-detention program. Petitioners therefore attempted to obtain

administrative review through the mechanism prescribed by regulation, but the Immigration Judge declined to exercise that authority.

64. The August 6 ruling also stated that no earlier hearing date was available before Petitioners' September 16, 2026 individual hearing. Petitioners remain subject to continuous body-worn GPS monitoring during that period. The administrative process therefore has not provided a timely means to test the necessity of the ongoing restraints. (Ex. D.)

## LEGAL FRAMEWORK

### A. Petitioners Are "In Custody" for Purposes of 28 U.S.C. § 2241

65. Section 2241 authorizes habeas relief for a person "in custody in violation of the Constitution or laws or treaties of the United States." The custody requirement is not limited to jail or prison. It extends to substantial restraints on liberty not shared by the public generally. *Jones*, 371 U.S. at 240; *Maleng v. Cook*, 490 U.S. 488, 491-92 (1989).

66. Central District courts have recognized that intensive immigration supervision can satisfy § 2241's custody requirement. See *Sun*, 2025 WL 2730235, at *3; *Abdeltawad v. Armant*, No. EDCV 26-01520-MWF (DTB), 2026 WL 1710301, at *2 (C.D. Cal. June 4, 2026); *Arcos v. Semaia*, No. 2:26-cv-01975-AYP, 2026 WL 1771048, at *5 (C.D. Cal. June 17, 2026).

67. Petitioners are continuously subjected to a physical GPS device attached to their bodies, required reporting, and home visits, with the possibility of arrest or detention for noncompliance. Those cumulative restraints significantly confine their daily lives and readily satisfy the liberal custody standard for habeas jurisdiction.

**B. Procedural Due Process Protects Petitioners Against Arbitrary Custodial Restraints**

68. The Fifth Amendment prohibits the federal government from depriving any person of liberty without due process of law. Freedom from government custody and other forms of physical restraint lies at the heart of the liberty protected by due process. *Zadvydas v. Davis*, 533 U.S. 678, 690, 693 (2001). These protections apply to noncitizens in removal proceedings. *Demore v. Kim*, 538 U.S. 510, 523 (2003); *Hernandez*, 872 F.3d at 981.

69. The fundamental requirement of procedural due process is the opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319, 333, 335, 348 (1976). Courts in this Circuit have applied *Mathews* when the government imposes severe immigration custody or supervision restraints without an individualized hearing. See *Sun*, 2025 WL 2730235, at *5-6; *Arcos*, 2026 WL 1771048, at *5-7.

70. The first *Mathews* factor strongly favors Petitioners. They spent more than eleven years building their family and life in the United States without body-worn GPS monitoring. The monitors now intrude on bodily autonomy, movement, sleep, work, exercise, family activities, and privacy every day.

71. The second factor also strongly favors Petitioners because the risk of erroneous deprivation is exceptionally high when ICE imposes GPS monitoring without a neutral hearing and without explaining any individualized factual basis. Petitioners' records—no criminal history, perfect attendance, stable residence, strong family ties, and substantial pending immigration claims—are the very factors that would matter in an individualized assessment.

72. The third factor favors Petitioners because an individualized hearing imposes only a modest administrative burden compared with the substantial liberty interest at stake and the

ongoing cost of intensive supervision. Less restrictive alternatives are already part of ICE's ATD toolbox.

73. At minimum, due process requires a meaningful, prompt, individualized opportunity to test whether body-worn GPS monitoring is actually necessary to mitigate a demonstrated risk of flight or danger. No such process was afforded before Petitioners were subjected to the challenged restraints.

**C. Substantive Due Process Forbids Punitive or Excessive Civil Restraints**

74. Substantive due process forbids civil restraints that are punitive in purpose or effect or excessive in relation to a legitimate nonpunitive objective. See *Bell v. Wolfish*, 441 U.S. 520, 539, 561 (1979); *Jackson v. Indiana*, 406 U.S. 715, 738 (1972); *Jones v. Blanas*, 393 F.3d 918, 934 (9th Cir. 2004).

75. In immigration custody, the recognized regulatory purposes are preventing danger and assuring appearance. See *Zadvydas*, 533 U.S. at 690; *Demore*, 538 U.S. at 528. A restraint that has no reasonable relation to those purposes, or that is excessive when less harsh methods would achieve them, violates substantive due process.

76. Petitioners present no record of danger and an exemplary record of appearance and compliance. SmartLINK, telephone reporting, and periodic in-person reporting directly address contact and appearance without continuous bodily attachment and location tracking. On this record, continuous GPS monitoring is excessive in relation to any legitimate regulatory need.

**D. The APA Requires Reasoned, Non-Arbitrary Agency Action and Compliance with Binding Procedures**

77. The APA requires a reviewing court to hold unlawful and set aside agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A). Agency action must reflect reasoned decisionmaking and a rational

connection between the facts found and the choice made. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 43 (1983).

78. Under the *Accardi* doctrine, an agency generally must follow its own regulations and procedures where individual rights are affected. United States ex rel. *Accardi v. Shaughnessy*, 347 U.S. 260, 265-68 (1954); *Morton v. Ruiz*, 415 U.S. 199, 235 (1974). This principle applies to agency procedures governing individualized ATD supervision decisions.

79. ICE's own ATD materials describe supervision as an individualized, case-by-case determination. Yet Petitioners' experiences disclose no reasoned explanation connecting their personal histories to the need for body-worn GPS monitoring. If the devices were imposed pursuant to a blanket escalation policy rather than individualized assessment, the action is arbitrary, capricious, and contrary to ICE's own procedures.

## CLAIMS FOR RELIEF

### COUNT ONE

### Violation of Fifth Amendment Right to Procedural Due Process

80. Petitioners re-allege and incorporate the preceding paragraphs.

81. Petitioners possess a substantial liberty interest in freedom from continuous body-worn GPS monitoring and other severe custodial restrictions.

82. Respondents imposed the challenged restraints without adequate advance notice, a neutral pre-deprivation hearing, a meaningful opportunity to contest the necessity of body-worn GPS monitoring, or an individualized decision explaining why lesser conditions would be insufficient.

83. Because Petitioners' liberty interests are substantial, the risk of error is high, and the burden of individualized process is modest, Respondents' actions violate the Fifth Amendment's guarantee of procedural due process.

**COUNT TWO**

**Violation of Fifth Amendment Right to Substantive Due Process**

84. Petitioners re-allege and incorporate the preceding paragraphs.

85. Continuous body-worn GPS monitoring substantially restrains Petitioners' liberty and causes concrete physical, employment, family, privacy, and reputational harms. Those harms are compounded by the FBI identity-history entries generated from the same ICE civil immigration processing, which characterize both Petitioners as having prior arrest data despite the absence of any criminal charge or conviction.

86. Neither Petitioner presents a danger, and both have demonstrated perfect appearance and reporting histories. Less restrictive supervision methods are readily available and fully adequate to maintain contact and assure appearance.

87. Under these circumstances, continuous body-worn GPS monitoring is punitive or, at minimum, excessive in relation to any legitimate nonpunitive purpose and therefore violates substantive due process.

**COUNT THREE**

**Violation of the Administrative Procedure Act**

88. Petitioners re-allege and incorporate the preceding paragraphs.

89. The APA prohibits agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A).

90. Respondents imposed or continued body-worn GPS monitoring without articulating a rational connection between Petitioners' individualized circumstances and the need for continuous location tracking, and without meaningfully considering less restrictive alternatives.

91. The challenged action is therefore arbitrary, capricious, and an abuse of discretion and should be set aside.

## COUNT FOUR

## Violation of the APA and the *Accardi* Doctrine

92. Petitioners re-allege and incorporate the preceding paragraphs.

93. ICE's ATD procedures require individualized, case-by-case consideration of factors including immigration status, criminal history, compliance, family and community ties, caregiver responsibilities, and humanitarian or medical circumstances before selecting a supervision technology.

94. Petitioners' records strongly favor non-body-worn supervision. Yet Respondents did not provide an individualized explanation for imposing GPS ankle monitors and, on information and belief, acted pursuant to a blanket policy of escalating supervision to GPS monitoring whenever possible.

95. By failing to follow the individualized procedures ICE has adopted to govern ATD supervision, Respondents violated the Accardi doctrine and acted unlawfully under 5 U.S.C. § 706(2)(A).

## PRAYER FOR RELIEF

WHEREFORE, Petitioners respectfully request that the Court:

1. Assume jurisdiction over this matter and issue an order to show cause forthwith under 28 U.S.C. § 2243;
2. Issue a writ of habeas corpus directing Respondents promptly to remove the GPS ankle monitors from Yong Yang and Yun Gao and to discontinue continuous body-worn GPS monitoring;
3. Permit Respondents to use reasonable non-body-worn supervision conditions, including SmartLINK, telephone reporting, periodic in-person reporting, and maintenance of current address and contact information, as reasonably necessary to assure appearance;
4. Declare that imposition or continuation of body-worn GPS monitoring without constitutionally adequate individualized process violates Petitioners' rights under the Fifth Amendment and, to the extent based on arbitrary or non-individualized agency action, violates the APA;
5. Enjoin Respondents from re-imposing body-worn GPS monitoring on either Petitioner absent advance notice and a prompt individualized hearing before a neutral decisionmaker at which the government demonstrates that the condition is necessary based on current evidence of flight risk or danger and that materially less restrictive conditions are inadequate;
6. In the alternative to immediate removal, order a prompt individualized hearing—within seven days or such shorter period as the Court deems just—concerning whether continued body-worn GPS monitoring is necessary;
7. Order Respondents to take all steps within their authority necessary to correct, withdraw, or cause the removal of the July 29 and July 30, 2026 FBI Identity History

Summary arrest entries generated from Petitioners' civil immigration processing, including submitting any appropriate correction, deletion, or expungement request to the FBI Criminal Justice Information Services Division; or, alternatively, to cause the records to be corrected so that they do not inaccurately characterize Petitioners as having criminal arrest records;

8. Award Petitioners their costs and reasonable attorney's fees to the extent authorized by law; and

9. Grant such other and further relief as the Court deems just and proper.

Respectfully,

Date: August 27, 2026

By: */s/ Michael Chen*
Michael Chen, Esq.
Attorneys for
Plaintiffs Yong Yang, Yun Gao

**VERIFICATION OF PETITIONER YONG YANG**

I, Yong Yang, declare under penalty of perjury under the laws of the United States of America that I am a Petitioner in this action; that I have read the foregoing Joint Petition for Writ of Habeas Corpus; and that the factual allegations concerning me are true and correct based on my personal knowledge, except as to matters stated on information and belief, and as to those matters I believe them to be true.

Executed on August 27, 2026, at Tustin, California.

X: Yong Yang

Yong Yang

## VERIFICATION OF PETITIONER YUN GAO

I, Yun Gao, declare under penalty of perjury under the laws of the United States of America that I am a Petitioner in this action; that I have read the foregoing Joint Petition for Writ of Habeas Corpus; and that the factual allegations concerning me are true and correct based on my personal knowledge, except as to matters stated on information and belief, and as to those matters I believe them to be true.

Executed on August 27, 2026, at Tustin, California.

X: *Yun Gao*

Yun Gao,

Dated: August 27, 2026